**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-21788-CV-SCOLA/TORRES

MADELIN OTANO PILOTO,

      Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
the Social Security Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'
CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment filed by Madelin Otano Piloto ("Plaintiff") [D.E. 21] and Andrew Saul, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") [D.E. 24] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching her unfavorable decision. Under the limited standard of review that governs this case, the Court finds that the motions are ripe for disposition and that substantial evidence supports the ALJ's determination.[1]  For the reasons stated below, Plaintiff's motion for summary

---

[1] On December 8, 2020, the Clerk of the Court referred to the undersigned Magistrate Judge a Report and Recommendation on any dispositive matters.  [D.E. 18].

judgment [D.E. 21] should be **DENIED**, Defendant's motion for summary judgment [D.E. 24] should be **GRANTED**, and the decision of the ALJ should be **AFFIRMED**.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff was born on September 22, 1972 and has completed the ninth grade. Plaintiff has no past relevant work history. Among other medical issues, Plaintiff has a history of migraines, depressive, bipolar disorder, seizure disorder, atherosclerosis, angina, schizoaffective disorder, and dysfunction of major joints. Plaintiff has sought medical treatment for these medical issues since at least 2015, including being evaluated or treated by at least five different doctors. Ultimately, Plaintiff alleges she was no longer able to work due to epilepsy and mental health issues.

On July 19, 2016, Plaintiff applied for supplemental social security income, alleging a disability onset of January 1, 2014. The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. Plaintiff then requested a hearing before the ALJ that took place on November 7, 2018. After considering the record and the testimony of a vocational expert ("VE"), the ALJ issued an unfavorable decision on June 11, 2019.

At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 19, 2016. The ALJ found at step two that Plaintiff had the severe impairments of major joint dysfunction, migraines, depressive, bipolar disorder, seizure disorder, atherosclerosis, angina, and schizoaffective disorder. The ALJ then determined, at step three, that her severe

impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: occasional climb of ramps and stairs; never climb of ladders, ropes, or scaffolds; occasional balance, stoop, kneel, crouch, and crawl; occasional exposure to extreme cold, extreme heat, wetness, humidity, vibration, and hazards; limited to simple routine tasks that can be learned in 30 days or less; and occasional contact with supervisors, co-workers, and the public. The ALJ then proceeded to step four and determined that Plaintiff did not have any past relevant work. Lastly, at step five, the ALJ concluded that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, such as cleaner, inspector hand packager, and bench assembler. Thus, the ALJ decided Plaintiff had not been under a disability, as defined in the Social Security Act, from July 19, 2016, the application date, through the date of her decision, June 11, 2019.

On April 6, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). Accordingly, this action is now ripe for disposition.

## II. STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422

(11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III. ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves her or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the

claimant is disabled.

An ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If an ALJ does not make such a finding, then the inquiry ends. *See id.* at § 404.1520(c). At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. An ALJ assesses a claimant's RFC at this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and

mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy.

This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform based on the claimant's RFC, work experience, education, and age. *See id.* at § 404.1520(e)-(f).

On appeal, Plaintiff asserts that the ALJ's decision must be remanded for three separate reasons: (1) the ALJ's five-step finding that there is a significant number of jobs in the national economy that Plaintiff could perform is not supported by substantial evidence, (2) the ALJ's RFC finding is not supported by substantial evidence, and (3) the ALJ failed to properly assess Plaintiff's alleged symptoms and limitations. We consider each argument in turn.

### A. *The ALJ's Finding That Plaintiff Could Perform Other Work in the National Economy is Supported by Substantial Evidence*

Plaintiff first argues that the VE's testimony regarding the requirements of the housekeeper cleaner, inspector and hand packager, and bench assembler jobs conflict with the description and requirements of the jobs as they appear in the

7

*Dictionary of Occupations* ("DOT"). Specifically, she argues that the jobs of inspector and hand packager and bench assembler have reasoning levels designated by the DOT that exceed Plaintiff's capacity as someone who is limited to "simple, routine, and repetitive tasks" per the ALJ's RFC finding.

Under the Social Security Act's regulations, if the ALJ finds that a claimant is unable to perform his past relevant work, the ALJ must show the existence of other jobs in the national economy that the claimant can perform, and this finding must be supported by substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). In making this determination, the ALJ may consider both the information contained in the DOT and testimony from a vocational expert. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018). An ALJ has an "affirmative duty to identify apparent conflicts" between the VE and the DOT, and once a conflict is identified, the ALJ is required "to offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict." *Id.* Per the Circuit Court, an apparent conflict is "a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. Put in another way, "a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.*

Here, the ALJ concluded that Plaintiff could perform other available work in the national economy. The AL's decision was primarily based on the VE's testimony that Plaintiff could work as a housekeeper cleaner, inspector and hand packager, and

8

bench assembler. Since the jobs of inspector and hand packager, as well as bench assembler, are reasoning level 2 jobs, they require that an individual be able to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Dictionary of Occupational Titles*, Appendix C, 1991 WL 688702. According to Plaintiff, had the ALJ's RFC properly accounted for her limitation to "understand, remember, and carry out simple instructions," an apparent conflict would have arisen between the reasoning level 2 jobs proposed by the VE's testimony and the DOT. We disagree.

The DOT's definition does not exclude individuals who can perform simple, routine tasks. *See Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795 (11th Cir. 2011) (individual limited to simple, routine work could perform jobs at reasoning levels 2 and 3). Further, the Eleventh Circuit's decision in *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005 (11th Cir. 2020), contrary to Plaintiff's suggestion, squarely supports the Commissioner's argument that there is no apparent conflict between the VE's testimony and the DOT in this case. *Valdez* found that a limitation to simple, routine, and repetitive work is not inconsistent with a Reasoning Level 2 job:

> We haven't decided the issue Valdez raises here—whether a limitation to simple, routine, and repetitive work is inconsistent with a job that requires a reasoning level of three. But it is unnecessary to decide it because, even if Valdez was not able to work as an order clerk, the ALJ still concluded that he could perform two other jobs: lens inserter, which has a reasoning level of one, *see* DOT, 713.687-026, and lens-block gauger, which has a reasoning level of two, *see id.* 716.687-030. Valdez has not argued that these jobs are inconsistent with his residual functional capacity, and *they are not*.

9

808 F. App'x at 1009 (emphasis added).

We also find Plaintiff's distinction between "work" and "tasks" to be illusory. Even if "work" successfully encompassed both performing tasks and carrying out instructions, and even if ALJ had accounted for Plaintiff's limitation to "understand, remember, and carry out simple instructions," the outcome would have been the same. As the DOT describes, reasoning level 2 jobs entail instructions that are uninvolved, albeit detailed. The Fourth Circuit held in *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019), that there is no conflict between "simple" and "uninvolved" instructions, as both connote instructions that "are not complicated or intricate." It further noted that detailed instructions correlate more with length than with complexity. That highly persuasive reasoning is sound and should be followed here. We find that there was no apparent conflict between the DOT and the VE's testimony pertaining to the inspector and hand packager and bench assembler jobs that an individual with the Plaintiff's residual functional capacity could perform.

Turning to another argument Plaintiff raises on this topic, Plaintiff contends that the ALJ failed to adequately consider her inability to communicate in English, which inability is inconsistent with the language requirements of any of the VE's recommended jobs. Our review of this issue shows, to the contrary, that there is no error warranting reversal. The VE's testimony was based on the ALJ's request to consider the claimant's age, education, and work experience when answering whether jobs exist in the national economy for her. Plaintiff's inability to speak English is a limitation that falls under the vocational factor of education. *See* 20 C.F.R. §

404.1564(b)(5)9. Thus, the ALJ's hypothetical questions posed to the VE specifically required the VE to consider Plaintiff's inability to communicate in English before testifying as to the possible jobs that Plaintiff could still perform in the national economy. Thus Plaintiff's English skills were adequately taken into account.

In any event, the Eleventh Circuit has held that jobs with a language level of two do "not specifically require that the claimant's language be English." *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 739-40 (11th Cir. 2018). The VE's testimony that Plaintiff can work as a housekeeper cleaner (language level 1), inspector and hand packager (language level 2), and bench assembler (language level 1) without being able to speak English, therefore, does not present an apparent conflict with the DOT.

Finally, we turn to Plaintiff's argument that, according to the Occupational Information Network, or O*NET, the VE's testimony that Plaintiff could perform the jobs of cleaner housekeeper and bench assembler is inconsistent with the ALJ's RFC finding that the claimant could only sustain "occasional" exposure to hazards. The problem that Plaintiff has in this respect is that neither SSR 004-4p nor the decision in *Washington v. Comm'r of Soc. Sec.* requires the ALJ to resolve conflicts between an O*NET definition and a VE's testimony; both refer only to the DOT. *See Tisdale v. Soc. Sec. Admin., Comm'r*, 806 F. App'x 704, 711 (11th Cir. 2020) (citing 20 C.F.R. § 416.966(d); SSR 00-4p, 65 Fed. Reg. 75,760 (2000); *Washington*, 906 F.3d at 1356). And as the ALJ considered the DOT in conjunction with the VE's testimony as it was required to do, the ALJ's finding that the VE's testimony was reliable and consistent

11

with the DOT was supported by substantial evidence.

Considering all these issues, we find the ALJ's decision that Plaintiff could perform other work in the national economy to be supported by substantial evidence.

### B. *The RFC Finding is Supported by Substantial Evidence*

Next, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because (1) it does not contain any limitations to account for exposure to noise or blurred vision, (2) overestimates the amount of standing and/or walking Plaintiff would be capable of performing given her right knee impairment, and (3) fails to account for the ALJ's rating that Plaintiff had moderate limitation in concentration.

An ALJ often considers opinions from medical sources when determining a claimant's RFC because "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. § 416.927(e)(2). The reason the Commissioner is tasked with this determination is because "[g]iving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").

"The RFC assessment must first identify the individual's functional limitations

or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (citation omitted). The social security regulations mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, at *6. As such, "[t]he ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

In making this determination, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer,* 395 F.3d at 1211) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision")); *see also Gully v. Astrue,* 2009 WL 1580416, *3 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specific[ally] and explicit[ly] set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence.") (citing *Freeman*, 220 F. App'x at

959-60) (alteration in original).

Here, substantial evidence supports the ALJ's RFC finding. As an initial matter, the RFC determination is reserved for the ALJ, and is not relegated to doctors. *See Robinson*, 365 F. App'x at 999. Using this authority, the ALJ properly evaluated the evidence of record in reaching the RFC finding. Even though Plaintiff disagrees with the ALJ's conclusion, and would resolve the factual issues differently, the decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

Indeed, as Plaintiff notes, her noise and vision sensitivity relate to her migraine headaches. The ALJ classified Plaintiff's migraines as a severe impairment at step two but ultimately found that such impairment or any combination of her impairments meets the severity of one of the listed impairments in 20 CFR Part 4040. As discussed by the ALJ, the record sufficiently establishes that Plaintiff has medically determinable impairments that could reasonably cause her symptoms, including those associated with her migraines and knee pain, but the record fails to establish that her impairments preclude the performance of a work routine.

The ALJ also noted that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Specifically, Plaintiff's medical treatment record indicates that Plaintiff's migraines—and thus her

symptoms—improved significantly since starting Botox therapy. Further, the ALJ considered Plaintiff's ability to take care of her daughter, do household chores (i.e., laundry and cleaning), drive, shop in stores for food and clothing, visit family members two to three times a week, and go to church on a regular basis, contradicting the notion that noises, such as those from cars, inside a store, and from people, "really bother" her. Correspondingly, during a physical exam in 2019, Plaintiff was alert and oriented, and no abnormalities were documented. That same year, for a mental status exam, she was also alert and oriented, although her attention was admittedly impaired. [D.E. 15].

With respect to Plaintiff's knee pain, the ALJ also considered her knee X-rays that were negative in 2015 in making her RFC finding. Plaintiff similarly presented full range of motion at a follow-up office encounter in 2017. Further, although there was knee swelling on exam in April of 2018, an examination in August of 2018 revealed her gait intact with deep tendon reflexes bilaterally normal at the knee and ankle. A few months later, in November, a neurological examination showed that Plaintiff had normal motor strength without atrophy or fasciculations, as well as normal and symmetrical deep tendon reflexes, sensation, and gait. The ALJ was entitled to take this record evidence into account in reaching the RFC finding.

Finally, Plaintiff's argument that the ALJ's RFC finding does not sufficiently account for Plaintiff's moderate limitation in her ability to concentrate, persist, or maintain pace does not align with the record. As the ALJ notes, an examination in May of 2017 established that Plaintiff was awake, alert, oriented and able to follow

commands. A similar finding was made upon examination in 2019. Further, her thought process was linear and goal oriented and there was no evidence of delusions. The ALJ accounted for her moderate impairment with respect to her concentration abilities, yet she ultimately found that Plaintiff had the capacity to perform light work, even in light of this limitation. Given that the VE was asked to consider Plaintiff's RFC, which incorporates this limitation as part of its analysis, it follows that the VE's testimony qualifies as substantial evidence to support the ALJ's conclusion that Plaintiff could perform certain jobs in the national economy, contrary to Plaintiff's belief. *See Wilson*, 284 F.3d at 1227 (holding that substantial evidence in the record supports the ALJ's finding, as the medical and other evidence simply was not consistent with Wilson's alleged disabling pain).

In sum, it is clear the ALJ evaluated Plaintiff's medical condition as a whole when making the RFC finding. Substantial evidence thus supports the finding that Plaintiff had the RFC to perform light work under 20 C.F.R § 416.967(b) even though there may be contrary evidence in the record, as Plaintiff highlights. The factfinder's conclusion is sound given the competent evidence in the record and the limited standard of review that we must apply.

### C. *The ALJ Properly Evaluated Plaintiff's Subjective Symptoms*

Last, Plaintiff argues the ALJ improperly discredited Plaintiff's testimony regarding her subjective symptoms. When a claimant attempts to establish a disability based on testimony of symptoms, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence

16

confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* at 1225. A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If an ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough . . . ." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also* SSR 96-7P, 1996 WL 374186, at *2 (S.S.A. July 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

When evaluating the credibility of a claimant's reports of the severity of her or his condition, an ALJ may examine the extent to which the claimant has sought medical treatment. SSR 96-7p, 1996 WL 374186, at *7. An ALJ may also consider whether test results in medical records reveal normal findings. *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (finding that evidence supported the ALJ's determination that the claimant was only partially credible where no physician suggested claimant could not work, physicians reported mostly normal conditions,

17

MRI scans were normal, doctors recommended conservative treatments, and claimant could engage in a range of activities). Moreover, an ALJ may consider a claimant's daily activities when making a credibility finding. *See* 20 C.F.R. § 404.1529(c)(3). When examining daily activities, an ALJ must consider the record as a whole. *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (faulting Appeals Council's finding that claimant's "daily activities . . . have not been significantly affected" when the Appeals Council "ignored other evidence that her daily activities have been significantly affected"). This means, for example, that participation in everyday activities of short duration will not prevent a claimant from proving disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).

Here, Plaintiff testified that she experienced severe and debilitating headaches from migraines and knee pain, among other symptoms. As mentioned previously, in evaluating Plaintiff's testimony, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ also found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the objective medical evidence and other evidence in the record.

The ALJ then discussed Plaintiff's daily activities and generally mild medical evaluations to illustrate this conclusion. For example, Plaintiff testified that she frequently visits her brother and aunts and goes to church on a regular basis. She could perform household chores and drive. Consistent with her RFC analysis, the ALJ also found Plaintiff's self-reported symptoms inconsistent with her physical

examinations that were mostly within normal limits or required medical treatment that significantly stabilized her symptoms and medically imaging results that generally showed benign or mild results. These findings constitute competent evidence that could support the ALJ's decision to discredit Plaintiff's subjective complaints.

Plaintiff ultimately fails to make a persuasive argument that the ALJ improperly discredited Plaintiff's inconsistent testimony. Instead, Plaintiff just repeats her testimony from the hearing into her motion but fails to cite to any case law that would support her argument that the ALJ made reversible error. In a sense, Plaintiff is requesting us to reweigh her testimony against the objective medical evidence. This we cannot do. *See Crawford*, 363 at 1158-59; *Hunter,* 808 F.3d at 822. Therefore, there is substantial evidence that the ALJ properly discounted Plaintiff's testimony because of the objective medical evidence. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.927(c)(3)(i); *see also Wilson*, 284 F.3d at 1225-26 (finding that an ALJ is not required to accept a claimant's subjective allegations of pain/symptoms when inconsistent with the medical record).

As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether substantial evidence in the record as a whole can support the ALJ's findings. *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212. The Court thus finds that the ALJ's conclusions are supported by substantial evidence. For these reasons, Plaintiff's motion for summary judgment [D.E. 21] should be **DENIED**

and Defendant's motion for summary judgment [D.E. 24] should be **GRANTED**.

### IV. CONCLUSION

Substantial evidence supports the ALJ's findings as noted in her unfavorable decision. The ALJ's conclusion applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless. For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 21] be **DENIED**, that Defendant's motion for summary judgment [D.E. 24] be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to set the deadline of **September 14, 2021** for the parties to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 6th day of September, 2021.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge